*In re* SELLING'S ESTATE.

(*Surrogate's Court, New York County.* June 28, 1888.)

EXECUTORS AND ADMINISTRATORS—APPOINTMENT—NON-RESIDENT—WHEN PREFERRED.
  Administration of an estate will be granted to a non-resident married daughter, in preference to a dissolute, irresponsible, and dishonest son of the intestate, though a resident of the state.

On application for letters of administration.

Rose Baum, daughter of David Selling, deceased, applied for letters of administration upon his estate, the granting of which was opposed by Joseph Selling, son of the intestate.

*David Tim*, for petitioner.    *Oscar J. Hochstadter*, for respondent.

RANSOM, S.    This is an application for letters of administration on the estate of deceased, by Rose Baum, a daughter.    The petition shows that the intestate died, leaving a widow, since deceased, and three children, Joseph Selling, Sarah Summers, and Rosa Baum, the petitioner.    Sarah Summers has renounced her right to letters of administration in favor of the petitioner.    The application is opposed by Joseph Selling, the son, on the grounds (1) that he is the only male child of deceased; (2) that the other two children are married females, one of whom lives in Boston, Mass., and the other in Omaha, Neb.; (3) because he lives in the state of New York.    He further says that there is no property of deceased to administer on.    Upon the 21st of June, the motion was argued, and both sides were given until June 26th. to file affidavits, but none have been filed.    The allegations in the affidavit of petitioner that deceased left personal property, consisting of money, jewelry, and bonds, are not overcome.    The proof submitted by the petitioner also· shows the respondent, Joseph Selling, to be a man of utterly worthless and. irresponsible character; that he is a professional gambler, know as "Poker Joe;" that with his other virtues he combines the keeping of a house of assignation; that in the case of one *Rosenham* v. *Selling*, in the city court, he testified in supplementary proceedings that the three bonds he stole from his mother a few days prior to her death (which bonds undoubtedly belonged to· his father's estate) he sold, and, using his own words: "I do not know myself how I spent the money which I received from those bonds, or how the money was used.    I gambled with a part of that money, and I thereby lost. some of it.    I had no income since I made the assignment to Mr. Hochstadter. I have been in nobody's employ, and I did not carry on business myself.    I. have been gambling since that time.    I have had no employment or vocation since I made the assignment except gambling.    I lived on the money which I won."    The proof further shows that this Joseph Selling was the proprietor· of a saloon, which was complained of in the fall of 1886 as a resort for dissolute persons, and as being without a license.    An assignment of this resort. was made by Selling to Oscar Hochstadter, his attorney in this proceeding. If further appears that Selling is not only a gambler, a thief, and ex-keeper· of an assignation house, but is also a forger, and in Philadelphia was arrested. for embezzlement.    And yet, with this record of crime, he has the effrontery to oppose this application, and seriously asks that letters be issued to him. And it is more remarkable that any lawyer, claiming or pretending to be a. reputable member of the profession, should aid him in an effort to defraud the estate.    The personal interest of this attorney, as assignee, probably is· the true solution of his conduct.    It is impossible to believe that he did not know of his client's rascality.    It is well settled that mere non-residence is· not a sufficient ground to refuse to issue letters.    The motion is granted.