(June 6, 1902.)

## HARRIS, Administrator, v. COATES.

[69 Pac. 475.]

Administrator De Jure—Administrator De Facto.— One who takes charge of an estate as administrator, and takes possession of the assets of the estate of his decedent, and administers thereon, cannot escape liability by reason of his having failed to take the oath, and filing the bond required by law. If he is not an administrator *de jure* he is *de facto*, and may settle the estate if neither creditors nor heir object.

Administrator—Attorney's Fee and Costs.—Where an administrator neglects and fails to close and settle up the estate of his decedent after the same is ready for settlement and distribution, and thereafter attempts to have the whole of such estate set aside to him as sole heir or legatee, and he fails in such attempt, he must pay legal interest on all money in his hands ready for distribution from the time such distribution ought to have been made by him, and it is error to allow him attorney's, fees and the costs he makes attempting to establish his claim to the assets of such estate.

(Syllabus by the court.)

APPEAL from District Court, Owyhee County.

E. M. Wolf, for Appellant.

The facts are stated in the opinion. We believe that it is the law of this state that where the administrator unjustly and for his sole benefit delays the administration of the estate to the injury, damage and annoyance of the other heirs that he should be charged with interest upon the estate from the time it is in condition to be closed up until it is finally distributed. (*In re Moore's Estate,* 72 Cal. 359, 13 Pac. 880; *Walls v. Walker,* 37 Cal. 429, 99 Am. Dec. 290, and note; *In re Armstrong,* 125 Cal. 603, 58 Pac. 183.) We further contend that the administrator in this case should not be allowed attorney's fees nor any expenses incurred from the time set for hearing of the first petition for distribution, for the reason that all of the services of said attorney and all of the expenses so incurred were for the sole purpose of obtaining the whole estate for the benefit of the said administrator and against the interests of said estate. (*Estate of Marrey,* 65 Cal. 287, 3 Pac. 896.) The statute of this state, section 5385, is to the effect that when it comes to the knowledge of the probate judge, from any source, that the bond is insufficient, he must require the administrator to give a sufficient bond. If the administrator refuse to give new or sufficient bond his letters may be revoked. (Sec. 5383.) All acts of an administrator as such are valid, etc., until his letters are revoked. (Sec. 5402.) Such irregularities as exist in this case do not affect administration of the executor. (*Dennis v. Bint,* 122 Cal. 39, 68 Am. St. Rep. 17, 54 Pac. 378.)

E. Nugent and J. F. Nugent, for Respondent.

No exceptions were saved by appellants in the district court, and hence there is nothing to be reviewed in this court. (*Warren v. Stoddard,* 6 Idaho, 692, 59 Pac. 542; *Thorne v. Hammond,* 46 Cal. 531; *Commercial Bank of Madera v. Redfield,* 122 Cal. 405, 55 Pac. 161; *Estate of Page,* 57 Cal. 238.)

SULLIVAN, J.—Mrs. Nancy Harris, a resident of Owyhee county, died intestate on the nineteenth day of August, 1897,

leaving àn estate consisting of personal property, promissory
notes, and cash estimated in the petition for letters of adminis-
tration at about $15,000. Alvin M. Harris, the respondent
herein, and son of the deceased, petitioned the probate court of
said county for letters of administration on the 11th of Decem-
ber, 1897. His bond was duly filed in said court on February
19, 1898, and letters of administration were duly issued to him,
and he entered upon his duties of administrator. The prop-
erty belonging to said estate was inventoried, and thereafter ap-
praised at $13,496.44. After publishing notice to creditors,
and the lapse of more than ten months thereafter, he presented
to said court his final account and his petition praying for ap-
proval of his final account and for distribution of said estate.
In his petition he stated that all of the debts owing by said
estate had been paid; that said estate was then in condition to
be closed; and that his decedent left surviving her petitioner, a
son, aged thirty-three years, Mary J. Loveridge, a daughter, J.
C. Coates, a son, and David Coates, a son, all residing in the
state of Idaho, and that each of said children are entitled to
one-fourth of said estate. In said petition he also prayed that,
after due notice to said parties, the estate be distributed, one-
fourth to each of said heirs. Due notice was given of the
hearing of said petition. On the day set for the hearing the
administrator filed a motion in said court alleging that his bond
as administrator was insufficient, and that his administration of
said estate was void, and asked that he be permitted to give a
new bond and take anew the oath of office. Said motion was
granted. Thereafter he again inventoried and had said estate
appraised, published notice to creditors, and on the twenty-
sixth day of January, 1901, filed his final report and petition
for distribution, and gave three days' notice for the hearing
thereof. In said petition he asked that the estate be closed,
and that all of said estate be turned over to him as sole heir
of said estate. On the day set for the hearing the probate
court granted his petition, and gave him the whole of said es-
tate. Thereafter the other three heirs, above named, appeared
in said court, and obtained an order setting aside the said de-

cree granting the administrator all of said estate, and the matter was again set for hearing on April 23, 1901. After a hearing the probate court allowed his final account. Said three heirs appealed from the order allowing the final account to the district court, where the matter was heard anew, and after such hearing the district court sustained the action of the probate court, from which action of the district court this appeal is prosecuted. Appellants assign as error: 1. The action of the district court in not charging the administrator with interest at the legal rate on the amount of money in his hands from the date that he filed his first petition for distribution of said estate, to wit, October 21, 1899. 2. That the court erred in allowing the administrator attorney's fees and other expenses incurred by him after the date of his filing his first petition for distribution, filed October 21, 1899, for the reason that said estate was in a condition to be closed at that time, and that all expenses incurred since then were so incurred for the sole purpose of defrauding the other heirs out of their interests in said estate, and that the delay was caused for the sole benefit of said administrator and in fraud of the rights of other heirs.

Some question is raised as to the sufficiency of the assignments of error. The record contains a bill of exceptions duly settled by the court, and it contains a sufficient assignment of errors to authorize the court to pass upon those above stated. It is urged by counsel for the administrator that his first administration on said estate was not legal, in that he had not taken the proper oath of office, and had failed to file a bond in accordance with the provisions of the statute, and for those reasons his administration was void. An administrator cannot take advantage of his own neglect or wrong, and thus escape responsibility. If he was not administrator *de jure,* he was *de facto,* and is held as firmly as if he were administrator *de jure,* and he may close up the estate if neither creditors nor heirs object. The following facts appear from the record: That the deceased was the widow of Levi Harris, deceased; that during their marriage a son was born to them, who is the

administrator above referred to; that prior to her marriage to Levi Harris, deceased, she had been married to a man by the name of Coates, and bore him three children, to wit, J. C. Coates, Mary J. Loveridge, and David Coates; that on the death of Levi Harris he left a will, whereby he bequeathed all of his estate to his said widow during her lifetime, and, on condition, the remainder over to his son, the said Alvin M. Harris, said administrator; that during the course of the administration of said Levi Harris' estate, Alvin M. Harris and said widow entered into a contract by which she conveyed to him all of the real estate and a part of the personal property belonging to said estate, and he transferred to her all of the money, notes, and some of the personal property. Each took possession of the property so transferred to them. She died possessed of said property so turned over to her under said contract, and that, with its increase, is the property involved in this litigation. After those transfers were made, the estate of Levi Harris was closed, and the probate court entered a decree distributing the property according to the will—that is, a life estate to Nancy Harris, and the remainder over to A. M. Harris—and it is claimed that said decree is a bar to appellants' rights under said contract between the deceased Nancy Harris and A. M. Harris, and it is upon the theory that said contract was binding on A. M. Harris, that the three heirs of Nancy Harris, deceased, are contesting the acts of said administrator subsequent to the filing his first petition for the distribution of said estate, which was filed on October 21, 1899. The question as to whether said contract was binding upon A. M. Harris has not yet been decided by the probate court, and is now there pending, and we do not pass upon that question in this opinion. The main question before us for decision is, Did the court err in not requiring the administrator to pay the legal rate of interest on the money in his hands from the date that his first petition for distribution was to have been acted upon as per notice? If the appellants are heirs, with A. M. Harris, to said estate, the court erred in not requiring him to pay legal interest on all money in his hands from said date, and

erred in allowing him attorney's fees and costs of any and all proceedings had and done by him since said date. The estate, according to the administrator's own showing, was ready for settlement on October 21, 1899, and the day fixed for the hearing thereof was November 27, 1899. He must, therefore, be charged with seven per cent per annum for all money in his hands ready for distribution on that date, and must not be allowed any attorney's fees or costs since said date.

It is suggested by counsel for respondent that the final account filed October 21, 1899, shows that said estate was not ready for settlement. We cannot agree with that contention. While a few debts remained unpaid, the money was in the hands of the administrator for their payment, and all that was needed was an order of the court authorizing it; and, as to the uncollected notes, it often happens that promissory notes are distributed among the heirs, which may be done. In case it is finally determined that the respondent is the sole heir to said estate, he will be required to pay all costs and expenses of administration; and, if it is finally decided that the appellants are entitled to three-fourths of said estate, they must not be required to pay attorney's fees and costs incurred by the administrator in opposing their claims, and they will be entitled to legal interest on the amount of money that they may receive from said estate from the twenty-seventh day of November, 1899.

The question of the proper method of appeal from the probate court to the district court has been dwelt upon in the briefs of counsel—as to whether, on such appeal, the matter is to be tried *de novo,* or heard on the record sent up. Counsel for respondent moved in the district court to dismiss the appeal on the ground that it had not been taken in accordance with statute in this, to wit, that no transcript on appeal had been filed in the district court; that no bill of exceptions or statement of the case or assignment of errors had been filed in said court; that no legal notice of appeal, or any certificate of an undertaking on appeal, or stipulation waiving the same, had been filed. Said motion was overruled, but no appeal or

cross-appeal was taken from the judgment by respondent, and for that reason that question is not before us on this appeal, and cannot be reviewed here.

The judgment is reversed, and the cause remanded, with instructions to modify said judgment in accordance with the views expressed herein.   Costs are awarded to appellants.

Quarles, C. J., and Stockslager, J., concur.